**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

**THE UNITED STATES OF AMERICA,**

                              **Plaintiff,**          **Criminal Action Number:**
                                                                       **13-Cr-00467 (SAS)**

      **vs.**

**SETH BEOKU BETTS,**

                              **Defendant.**

_____

# DEFENDANT SENTENCING MEMORANDUM

**Aiello & Cannick**
_Attorneys for Defendant, Seth Beoku Betts_
**69-06 Grand Avenue**
**Maspeth, New York 11378**
**Telephone:  (718) 426-0444**
**Dated:  May 30th, 2014**

## ___OBJECTIONS TO PRE-SENTENCING REPORT___

While we do not have any objections to Probation's Pre-Sentencing Report, we do however we wish to point out a few items that are factually incorrect or typographical errors.

¶ 6 – The report states that the plea was taken before Your Honor.  However, it is as in fact taken by Magistrate Gabriel Gorenstein.

¶ 15c – In the middle of paragraph, Probation report states  "That same day, BETTS transferred $3325,000 of the university's investment money to a car dealership for the purchase of a Ferrari and a Maserati."   The dollar amount stated appears to be in error or factually inaccurate.

## ___INTRODUCTION___

Seth Beoku Betts comes before this Court having pled guilty to one Count of Securities Fraud in violation of 18 U.S.C. § 1343 F.

Mr. Betts by his undersigned counsel respectfully submits this sentencing submission in anticipation of his upcoming sentencing hearing.   For the reasons set forth herein, we respectfully submit that a non-guideline sentence of time served is sufficient but not greater than necessary to satisfy the ends of justice.

Mr. Betts is 38 years old.  While he has had prior brushes with the law, he has no convictions of any sort.  He does not minimize his conduct here in any way.  He is contrite and accepts full responsibility for his actions.  Consequently, nothing said here is intended to detract or diminish from the seriousness of his offense.

### *THE OFFENSE*

Mr. Betts accepts full responsibility for his conduct.  He is extremely remorseful for the outcome here.  However, it is vital that the Court have a full and complete picture of what happened here.  This was not a situation where Seth Betts woke up one morning and set out on a path to scheme Ball State University (hereinafter referred as "BSU") out of its monies.  He did in fact purchase CMO with the bulk of the monies invested by BSU.  Almost immediately after receiving BSU's initial investment(s), Seth engaged the services of others and began his search for Triple A rated CMO (see Exhibit A).  Notwithstanding Seth's great difficulty in identifying Triple A CMO, they were found and purchased and placed in an account with Pension Financial Services (see Exhibit B).

Although Seth was a novice in this arena, he vetted and ultimately engaged leading financial institutions to assist him in negotiating the purchase and sale of CMO.  Also, from the very outset of this venture, he engaged the services of an attorney (A. Derek Roberson) who specializes in financial transactions to assist him in every aspect of the process.  In fact, the monies invested by BSU were kept in his attorney escrow.  Seth's intent was to purchase Triple rated CMO and do a quick turnaround sale.  However he quickly learned that such an approach

was far from reality in the CMO world.  He also learned that CMO transactions were complex and risky.  Moreover, much to his chagrin, he discovered that there were very few financial institutions that had expertise in the intricacies and nuances in negotiating CMO (see Exhibit C).

Clearly Mr. Betts a novice in dealing with CMO as was BSU's representative Gale Prizevoits.  In an email exchange between her and Seth's broker Clay dated 11/18/09, she acknowledged that - "I cannot say that I understand this type of trade but at least feel comfortable that the two of you do" (see Exhibit D).

Seth had numerous setbacks in closing deals on the sale of the CMO that he purchased on behalf of BSU.  Nonetheless he was essentially transparent with BSU and kept its representative informed as to the status of the prospective deal (see Exhibit E).  Moreover in an effort towards greater transparency and to allay BSU concerns, he allowed BSU to have direct contact with his broker (see Exhibit F).

Aside from the difficulties of simply buying and selling CMO, Betts also experienced tremendous difficulty in retaining control and ownership of the CMO that he was successful in purchasing.  He encountered the unscrupulous underbelly of the CMO world.  It's a world of seedy and nefarious individuals.  Jamie Williams, an individual with whom Seth had done real estate deals assisted Seth in identifying a broker to assist in the purchase of CMO (see Exhibit G).  Afterwards, she suggested that Seth place the bond in the escrow account of Attorney Jon Divens.  Shortly thereafter Divens took control of the bond and began it use its profit and interest for his benefit.  Betts subsequently learned that Divens and Williams were in cahoots. Betts demanded immediate return of his bond.  Divens absolutely refused Betts and his attorney's demands for return the bond.

Betts engaged attorney(s) in both California and Florida[1]. He sued Divens and Williams. Betts obtained a judgment against Divens in Florida which was subsequently honored in California (see Exhibit H). Betts' action against Jaime Williams was referred to mediation. They eventually entered settlement agreement (see Exhibit H1). Ms. Williams never paid on the agreement. In fact, she absconded.

Betts obtained a judgment of against Divens for $55,000,000.00. However, he never received a dime of it. Note that in an effort to get access to the monies quickly (so that he could address the BSU issue), Betts agreed to settle the judgment for a $5,000,000.00 payout. Divens stalled him for months and months. In hopes of finding Divens' and William's assets, Betts engaged the services of an assets locator. Nothing was found for either. Betts ultimately gave up.

As a result of his conduct, Divens was disbarred (see Exhibit I). His hijacking of the Betts' Cobalt bond virtually eliminated any and all prospects of Mr. Betts closing on his deal (see Exhibit I). Prior to litigation, Betts also sought the assistance of the Florida Attorney General's Office to aid in the return of his bond (see Exhibit J).

We note that BSU was kept abreast of litigation strategy in Betts' efforts to recover his bond (see Exhibit K).

---

[1] Divens was an attorney based in California and a member of the California Bar.

As mentioned previously, Seth Betts takes full responsibility for his actions. He acknowledges that he did indeed use a portion of BSU's money for his personal use. He appreciates that such conduct cannot be excused.

### *THE APPROPRIATE SENTENCE*

In this post <u>Booker</u> era, the challenge of the sentencing court is to mete out a sentence that is sufficient but not greater than necessary. In doing so, the Court must consider the circumstances of the offense as well as the total bent of Seth Betts' life. Again, it is our considered view that a non-guideline sentence of time served here is sufficient but not greater than necessary to satisfy the ends of justice.

While we recognize the seriousness of the offense, we ask the Court to consider Mr. Betts' history of productivity, contributions to his family and community and his extraordinary acceptance of responsibility. We have submitted numerous letters (see Exhibit L) attesting to his good character and sense of family. We note that these letters are not typical of what the Court normally views in this phase. They are letters and cards sent by family and friends to Mr. Betts shortly after his arrest. Inasmuch as these letters were not tailored for litigation purposes, we believe that they are raw and provide an honest insight of the feelings and views that the writers have for and of Mr. Betts.

In *Gall v. United States*, 552 U.S. 38, 49-50 (2007), the Supreme Court held that the guidelines provide a starting point for a reasonable sentence, however, a sentencing court "must

make an individualized assessment based on the facts presented." The Court also stated that the sentencing court cannot "presume that the Guidelines range is reasonable." *Id.* As a result, the sentencing court can use the advisory guidelines to create an appropriate sentence after considering the factors enumerated in 18 U.S.C. § 3553(a). That appropriate sentence may be outside the guidelines range as long as the "justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

### *18 U.S.C. § 3553(a) FACTORS TO BE CONSIDERED IN IMPOSING A SENTENCE*

1. The nature and circumstances of the offense and the history and characteristics of the defendant.

   a)      The nature and circumstances of the offense.

Mr. Betts acknowledges and continues to appreciate that he was involved in criminal conduct that was serious and significantly harmed BSU financially. He has demonstrated extraordinary acceptance of responsibility for his conduct. Immediately after his arrest, he instructed counsel to liquidate the house and cars purchased with BSU funds. He instructed that this be done so that the proceeds from the sales of these items could be returned to BSU. In addition, he instructed counsel to advise the Government that he intended to enter a guilty plea. He eschewed any and all motions and requested a change of plea date.

As we noted previously, dealing in CMO is a complex and extremely risky undertaking. Moreover, the area is infested with nefarious individuals. Notwithstanding Mr. Betts best efforts and intentions, he was a novice and well in above his head.

b)       The history and characteristics of the defendant.

The Probation Report well documents Mr. Betts' life.  We will not be repetitive here.  However, we will amplify a few items.  Seth is of good stock.  He is the product of loving and caring parents.  His father was a distinguished attorney in London and his mother was an educator.  They provided Seth and his siblings with an upper middle class upbringing.  They imbued in their children the values of hard work, respect and to do what is right.  Moreover they are God fearing people.  This is captured in the first letter Seth received from his mother after she learned of his arrest and detention.  She wrote --

> "It is with a heavy heart that I am writing this letter.  I just want you to know that God moves in a mysterious way, his wonder to perform.  I am not sure if you remember: it was just come time ago, we were on the phone chatting, whilst you were waiting to board your flight to North Carolina.  We did not know that what happened was going to happen.  Those conversations are still vivid in my mind.  It was like yesterday.
>
> Seth, I would like you to know that we are all in this together as one big family.  Please do not think for one moment that you are alone in this because we are supporting you wholeheartedly.  I would sincerely like you to know that we are all praying for you and for ourselves. Painful though it is, God has a way of doing things.  We are not questioning Him because we are aware of the fact that things happen for a reason." (See Exhibit M).

All of Seth's siblings are attorneys.  He has spent much of his adult life dealing in real estate and trying his hand in various business ventures.  While his career has not been as stable as his siblings, he is viewed as the family's rock.  That notion is the consistent theme of the cards and letters in Exhibit L.

2.     The need for the sentence imposed. 18 U.S.C. § 3553 (a) (2).

       a.     To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

       Mr. Betts has demonstrated exceptional acceptance of responsibility.   Without Court intervention or mandate, he immediately liquidated those items obtained with BSU monies.  He is extremely remorseful for his conduct.  This is not a situation where he woke up one morning and decided he would scheme BSU out of their monies.  From the outset of the venture, he exercised good faith and diligence.  He was transparent by and large and kept BSU in the loop.  He engaged competent professionals to assist him.  He dealt with reputable institutions and professionals.  Clearly he did not appreciate the complexity of the field nor the difficulty in obtaining and selling CMO.  Thus his inexperience coupled with his wrong doing has caused him to literally lose everything that he owned.   Not only must he bear the responsibility of reimbursing BSU all of its monies, but he must now start his life anew.  Aside from the items that he purchased with BSU money, Betts owned a home in North Carolina as well as luxury automobiles.  As a result of his arrest and detention, he lost these items.  Moreover he has lost his furniture, clothing, etc.  He has lost all of his belongings and does not own anything in this world.  Given his background and where he was on the socio-economic ladder, we submit that his current circumstances certainly will promote respect for the law as well as reflect the seriousness of the offense.  Seth has lived a very comfortable life.  Being confined over the past year at Metropolitan Detention Center (MDC) has been a humbling and devastating ordeal for Mr. Betts.  While at MDC his health has deteriorated.  He has become a full diabetic and now on insulin.  Too, he has had severe vision issues throughout his pre-trial detention.  (See Exhibit N).

Given Seth Betts' life and the circumstances surrounding his conduct, a non-guideline sentence of time served will not prevent the achievement of these sentencing factors.

      b)      To afford adequate deterrence to criminal conduct.

As noted above, Mr. Betts fully appreciates the consequences of his conduct. He does not express remorse because he was caught. Rather, Mr. Betts expresses remorse because of the impact that his arrest and subsequent conviction has had and will continue to have on his family, as well as himself. His future now hangs in the balance. Moreover, the loss that he has experienced coupled with a felony conviction will have a lasting impact on Seth. The likelihood of recidivism is remote.

      c)      To protect the public from further crimes of the defendant.

Mr. Betts comes from a family of professionals, essentially lawyers. They are all model citizens in their own right. Seth's actions here was a complete shock to all of them; for he too was viewed a role model and pillar in his community. While he has had a few brushes with the law he has no criminal convictions. For the most part, his prior brushes with the law suggest that he is a bad driver. The impact of a felony conviction will have on his life has undoubtedly crystallized just how pool of a decision he made. There is no reason to believe that a non-guideline sentence of time served will not meet the requirement of this sentencing factor. Again, we note that Mr. Betts did not set out on a scheme to defraud BSU of its monies. We contend that it was a confluence of items that led him to lose his moral compass.

3.      The kinds of sentences available.  18 U.S.C. § 3553(a)(3).

The United States Court of Appeals for the Second Circuit stated in *United States v. Jones*, 460 F.3d 191, 194, that "[w]ith the entire Guidelines scheme rendered advisory by the Supreme Court in *Booker*, the Guidelines limitations on the use of factors to permit departures are no more binding on sentencing judges than the calculated Guidelines ranges themselves."

The Court then stated that "[a]lthough the sentencing judge is obliged to consider all of the sentencing factors outlined in section 3553(a), the judge is not prohibited from including in that consideration the judge's sense of what is a fair and just sentence under all circumstances." *Id.* at 194.  Thus, while the Court must make a determination that takes the Guidelines into account, the Court is not prohibited from looking at the facts and circumstances of Mr. Betts' particular set of circumstances and fashioning a reasonable sentence that is individualized yet sufficient, but not greater than necessary to accomplish the goals of sentencing.

The fourth, fifth, sixth and seventh factors require that the Court consider the sentencing guidelines, pertinent policy statements, the need to avoid unwarranted sentence disparities, and the need to provide restitution.

As it relates to the parity, we bring to the Court's attention to <u>U.S. v. Matthew Taylor</u>, SDNY, Case No. 13-Cr-251 (WHP).  It is a case that is factually similar.  In <u>Taylor</u>, Judge Pauley imposed a non-guideline sentence of probation and restitution.

## *CONCLUSION*

Seth Betts is not the worse of the worse. By and large, he has lived a crime free productive life. His involvement here was an effort to develop a business relationship wherein both parties would gain substantial profits. He did not enter this endeavor to defraud BSU. Initially he exercised diligence and good faith in trying to bring the deal to closure. He surrounded himself, at great expense, to successfully purchase and sell CMO. He kept BSU abreast of his efforts. He maintained constant communications with them. It was not until several months before his arrest that he terminated communications. His conduct here is not in keeping with his upbringing. He is extremely embarrassed for using a portion of BSU's money for his personal gain. He recognizes that he must pay for that act. Seth is a broken man. He is wholly repentant. He has regained his moral compass. His single goal is to reclaim his life; making things right with BSU is an essential part of that process. We are confident that Seth will rebuild his life and lead a law abiding life. He will not be back in front of this Court ever again. When he walks out of prison, he will do so as a broken humbled man. He will walk out homeless, penniless and clothes less. However, he will walk into the awaiting arms of a family that is prepared to help him rebuild. They will reinforce his moral compass and assist him in every respect on being a man that he was. Seth's embarrassment is not only for his conduct but also the shame he has brought to his family. To his mind, it is of such a magnitude that he made certain that they will not be present to see him stand for judgment before Your Honor. Notwithstanding his feelings, the family stands ready to receive him. They recognize that he has long been their rock and now they are prepared to do whatever is needed to assist him. They

have asked me to ask Your Honor to show him mercy. Seth too stands before you today seeking compassion and mercy.

We urge Your Honor to be merciful and allow him to start his rebuilding process today. We request that you sentence him to a non-guideline sentence of time served.

Thank you for your consideration.

By: _____
Deveraux L. Cannick, Esq.
*Attorney for Defendant, Seth Beoku Betts*
Aiello & Cannick
69-06 Grand Avenue
Maspeth, New York  11378
(718) 426-0444